UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

CAROL KAPLAN,

Plaintiff,

        -vs-                                02-CV-00447C(F)

MULTIMEDIA ENTERTAINMENT, INC.,

Defendant.

———————————————————————————

APPEARANCES:      CHIACCHIA & FLEMING, LLP (ANDREW P. FLEMING, ESQ., OF COUNSEL), Hamburg, New York for Plaintiff.

                           NIXON PEABODY LLP (SUSAN C. RONEY, ESQ., OF COUNSEL), Buffalo, New York, for Defendant.

## INTRODUCTION

In this employment discrimination case, plaintiff alleges that defendant discriminated against her on the basis of her gender, race, and age, and paid her less wages than comparable male co-workers, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law § 296; section 154-11 of the Buffalo City Code; the Equal Pay Act, 29 U.S.C. § 206, *et seq.;* and the New York State Labor Law §194.  Defendant has moved for summary judgment dismissing all claims, arguing that plaintiff has failed to establish a *prima facie* case of employment discrimination and has failed to sustain her burden with respect to any other claims.  Item 25.

**BACKGROUND**

Plaintiff was employed as a television news reporter/anchor at WGRZ-TV, Channel 2, in Buffalo, New York, a station owned and operated by the defendant.  In her second amended complaint filed November 22, 2002, plaintiff states that she has been employed at WGRZ-TV since January 1990 and had anchored the 5 p.m. newscast for approximately eleven years.  Item 9, ¶¶ 8-9.  Plaintiff alleges that on April 22, 2002, she was demoted from her position as anchor person of the 5 p.m. newscast and was assigned duties as a reporter.  At the time of her reassignment, plaintiff was 41 years old, and was replaced by Bazi Kanani, a 25-year-old woman who had been with WGRZ-TV for approximately three months and who had less than three years' experience in television news.  *Id.,* ¶¶ 10-11.  Plaintiff is White; Ms. Kanani is African-American.  Plaintiff alleges that she was replaced by Ms. Kanani "in part because of the defendant's desire to fill one of the anchor positions in Channel 2's 5:00 News with an African-American."  *Id.,* ¶¶ 38-39.  Additionally, plaintiff alleges that she earned less money than male anchors and reporters for the same work.  Item 9, ¶¶ 18-23.

Plaintiff sets forth 14 causes of action:  violation of the federal Equal Pay Act (Count I); age discrimination under the New York State Human Rights Law (Count II); gender discrimination for unequal pay under the New York Labor Law and Buffalo City Code (Counts III and VII); gender and race discrimination under the New York Human Rights Law (Counts IV and V); intentional infliction of emotional distress (Count VI); gender and race discrimination under the Buffalo City Code (Counts VII, VIII and IX); breach of contract (Count X); deprivation of contract rights based on race under 42 U.S.C. §1981 (Count XI); gender and race discrimination under Title VII (Counts XII and XIII); and age

2

discrimination under the ADEA (Count XIV).  Item 9.

Defendant filed its answer to the second amended complaint on December 10, 2002.  Item 10.  It filed this motion for summary judgment on November 17, 2003, arguing that plaintiff had failed to establish a *prima facie* case of gender, race, or age discrimination, a violation of the Equal Pay Act, or any breach of contract.  Item 25.  In support of its motion, defendant filed numerous exhibits under seal, including deposition testimony and research regarding local television news programs and personalities. Item 31.

Plaintiff filed her opposition to the motion under seal on December 19, 2003.  Items 33-37.  Defendant filed reply papers on January 12, 2004.  Items 39-40.  On February 23, 2004, the court granted the motion to withdraw of plaintiff's attorney, Richard G. Tuttle, Esq.  Item 50.  On March 8, 2004, plaintiff's new attorney, Andrew P. Fleming, Esq., filed a notice of appearance.  Item 51.  On April 27, 2004, plaintiff filed an affidavit of Michael J. Maciejewski in opposition to the motion for summary judgment.  Item 54.  Defendant filed a response to the Maciejewski affidavit on May 11, 2004.  Item 56.   For the reasons that follow, the defendant's motion for summary judgment is granted, and the complaint is dismissed.


## FACTS

In support of its motion for summary judgment, defendant states that between 1991 and April 22, 2002, plaintiff was assigned as a reporter and co-anchor of the WGRZ-TV

5 p.m. news.[1]  In April 2002, Darryll Green, then the President and General Manager of WGRZ-TV, decided to reassign plaintiff from the co-anchor position.  Item 31, Exh. E (Deposition of Darryll Green), pp. 43-44.  At a management meeting in February or March 2002, Mr. Green and the management team discussed the most recent ratings for the 5 p.m. newscast, plaintiff's performance, and Mr. Green's decision to reassign plaintiff from the anchor position.  *Id.,* pp. 77-79; Exh. H (Deposition of Robert Connell), p. 14; Exh. I (Deposition of Vernon McKimmey), p. 13; Exh. J (Deposition of Andrew deSantis), pp. 17-18; Exh. O (Deposition of Bruce Corris), p. 30.  The WGRZ 5 p.m. newscast had the lowest ratings of all local newscasts between February 1998 and February 2002.  *Id.,* Exh. N.  In a Tracking Study from August 2001, plaintiff earned low ratings in familiarity and appeal with viewers.  *Id.,* Exh. K.  In a survey from March 2002, plaintiff was the least favorite local female anchor, and ranked the lowest of four female anchors in humor, trustworthiness, and attractiveness.  *Id.,* Exh. L, p. 11.  Mr. Green also considered plaintiff's tardiness and lack of preparation in his decision to reassign her from her anchor duties.  *Id.,* Exh. E, pp. 75, 97-98, 116-117.  Mr. Green stated that he made the decision to reassign plaintiff, which was supported by the entire WGRZ-TV management team, based on several factors, including plaintiff's on-air performance, ratings for the 5 p.m. newscast, and market research.  *Id.,* pp. 75-76.

After Mr. Green decided to reassign plaintiff, he chose Bazi Kanani as her replacement.  Item 31, Exh. E, p. 147.  At the time of her reassignment, Mr. Green offered

---

[1]  This factual summary is taken from the defendant's statement of undisputed facts (Item 29), affidavits of Darryll Green (Item 27) and Jodi Johnston (Item 28), and exhibits in support of the motion (Item 31), including plaintiff's deposition testimony.

plaintiff a position as anchor of the weekend newscast in addition to her reporting duties. *Id.,* Exh. A, p. 125.  Plaintiff rejected the offer, and continued to work as a reporter for WGRZ-TV, earning the same salary as before her reassignment.[2]

In opposition to the motion for summary judgment, plaintiff has purported to offer direct proof of discriminatory intent.  Specifically, as evidence of age discrimination, plaintiff states that in October 1998, Rich Kellman, then 57 years, was replaced as anchor of the 5 p.m. news by Scott Levin, then 35 years old.[3]  Item 36, Exh. A, pp. 8, 11.  In January 2001, Mr. Green removed Victoria Hong, then 39 years old, as anchor of the 6 and 11 p.m. newscasts, and did not consider Ms. Hong as a replacement for Bazi Kanani when Ms. Kanani left the station in 2003.  *Id.,* Exh. B, pp. 9, 18-19.  He took this action despite Ms. Hong's favorable market research ratings, including the highest ratings of all WGRZ-TV anchors.  Item 31, Exh. E, pp. 84-86.  In April 2002, when plaintiff was 41 years old, she was removed from her anchor position and replaced by Bazi Kanani, who was 25 years old at the time.  Plaintiff also states that Mr. Green considered two young women as plaintiff's replacements, Bazi Kanani and Jodi Johnston, ages 25 and 29 respectively, but did not consider older anchors.  *Id.,* pp. 9, 52, 53.[4]

Plaintiff points to a statement made by Bruce Corris, WGRZ-TV News Manager, that plaintiff could be replaced by someone "younger and prettier."  Item 33,  Exh. B.  She also

---

[2]  Since the filing of this motion, plaintiff's employment with WGRZ has been terminated.

[3]  Plaintiff admits that the decision to remove Mr. Kellman as anchor was made by Darryll Green's predecessor, but states that Mr. Green could have reversed the decision when he became General Manager of the station and filled the position with Scott Levin (Item 37, p. 6, n.2).

[4]  In fact, Mr. Green testified at his deposition that Victoria Hong was considered as a replacement for plaintiff, along with Maryalice Demler, Ms. Johnston, and Ms. Kanani.  Item 31, Exh. E, p. 81.

notes "code words" for youth used by Mr. Green in describing his employees.  Specifically, in his deposition, Mr. Green stated that he felt that Bazi Kanani "would do a better job of developing . . . in the long run" (Item 31, Exh. E, p. 47) and that Jodi Johnston had "potential" and was "growing" in her role as a news anchor.  *Id.,* p. 8.  Mr. Green also suggested that plaintiff be given the title "Senior Reporter," yet plaintiff objected to the term. *Id.,* Exh. A, pp. 60-61.  Plaintiff states that her "viewer impact scores" were higher than those of Jodi Johnston, yet Ms. Johnston was considered as her replacement.  *Id.,* p. 93.

As evidence of gender discrimination, plaintiff states that WGRZ-TV never paired same-sex anchor teams, referring to this practice as "gender slotting."  Item 33, ¶ 4.  As there were more female anchors available at WGRZ-TV, plaintiff argues that she was targeted for replacement, rather than her male co-anchor, when management decided to make a change in the newscast.  Additionally, plaintiff states that her 5 p.m. co-anchor, Scott Levin, had a higher "dislike" score on the 2001 Tracking Study, has less experience in news and, unlike her, does not hold an advanced degree.  *Id.,* ¶ 6; Item 31, Exh. K. Finally, Mr. Green terminated a female news director, Stacy Roeder, because she was, among other things, "too controlling."  Item 31, Exh. E. p. 141.

In support of her Equal Pay Act claim, plaintiff compared her salary to that of another reporter, Rich Kellman.  At the time of this action, plaintiff earned approximately $18,000 less than Mr. Kellman.  Item 36, p. 12; Item 33, ¶ 11.

As evidence of race discrimination, plaintiff states that she was replaced as anchor by Bazi Kanani, an African-American woman.  Plaintiff testified that Jodi Johnston recounted a meeting with Darryll Green, in which Ms. Johnston asked Mr. Green why she

had not been assigned to replace plaintiff as anchor of the 5 p.m. newscast.  Mr. Green reportedly responded that "it was a good thing to have a little color in the evening news." Item 31, Exh. A, pp. 11-112.  Additionally, plaintiff states that WGRZ-TV management was rewarded for promoting minority employees.  *Id.,* Exh. E, pp. 123-26; Item 36, Exh. D. Finally, plaintiff states that Mr. Green convened a focus group that was five-sixths African-American to evaluate plaintiff and Ms. Kanani, and changed the rules when the initial results favored plaintiff.  Item 33, Exhs. C, D.

In reply, Jodi Johnston, an anchor/reporter for WGRZ-TV, filed an affidavit in which she denied hearing Darryll Green comment about the need for "a little color in the evening newscast."  She stated that she has no knowledge of any discriminatory remarks or evidence that plaintiff was the subject of race discrimination.  Item 28, ¶ 5.

In an affidavit filed April 27, 2004, Michael J. Maciejewski stated that he was an employee of WGRZ from 1999 until August 2003.  Item 54, ¶ 3.  He reviewed audition tapes and met with a candidate for the weekend anchor position.  *Id.,* ¶¶ 6-7.  Mr. Maciejewski stated that he was told by the acting executive producer, Bruce Corris, that WGRZ wanted to fill the weekend anchor position with a minority candidate.  *Id.* ¶8.  Bazi Kanani was hired in January 2002, and was promoted from the weekend anchor position to the weekday 5 p.m. anchor position after two weeks (four days) on the air.  *Id.,* ¶ 10.  Mr. Maciejewski stated that Ms. Kanani did not have adequate experience for the responsibilities given her.  *Id.,* ¶¶ 11-13.  It was Mr. Maciejewski's opinion "that race and perhaps age were motivating factors in the quick hiring and quick promoting of Ms. Kanani."  *Id.,* ¶17.

## DISCUSSION

### 1. Summary Judgment Standard

The standard of review on a motion for summary judgment is well established. Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The burden of establishing the absence of a genuine factual dispute rests on the party seeking summary judgment. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir. 1994). The movant may discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case on an issue on which the non-movant has the burden of proof. *See Celotex,* 477 U.S. at 323.

If the moving party meets its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir. 1991). The nonmoving party may not rest upon unsubstantiated allegations, conclusory

assertions, or mere denials, but must set forth and establish specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  A metaphysical or other whimsical doubt concerning a material fact does not establish a genuine issue requiring trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584 (1986).  If there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.  *Chambers,* 43 F.3d at 37.

**2. Title VII, ADEA, § 1981, and the New York State Human Rights Law**

All claims relating to gender, race, and age discrimination are analyzed under the same framework as claims brought pursuant to Title VII.  *Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir. 2000).    It is unlawful under Title VII, the ADEA, and the New York State Human Rights Law for an employer to fail to hire, to discharge, or to otherwise discriminate against an individual because of his or her gender, race, or age.  *See* 42 U.S.C. § 2000e-2; 29 U.S.C. § 623(a)(1) - (2); N.Y. Exec. Law § 296(1)(a).[5]  Under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), to withstand a motion for summary judgment, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) she was in a protected class, (2) her job performance was satisfactory, (3) she was subjected to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.), *cert. denied,* 474 U.S. 829

---

[5]  To the extent that plaintiff has raised separate discrimination claims under the Buffalo City Code, they are analyzed in the same manner.

(1985).  Plaintiffs' initial burden in establishing a *prima facie* case of discrimination is said to be "de minimis."  *Cronin v. Aetna Life Ins. Co.,*  46 F.3d 196, 202 (2d Cir. 1995).

Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer, who must articulate some legitimate, non-discriminatory reason for the adverse employment action.  *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981).  Should the employer sustain this burden of production, the plaintiff must then have an opportunity to prove that the employer's reasons for the challenged action were merely a pretext for discrimination.  *Hicks,* 509 U.S. at 511; *Burdine,* 450 U.S. at 256.  The burden of persuasion, however, at all times remains with the plaintiff on the issue of the true motivation for the discrimination. *Hicks,* 509 U.S. at 509-511; *Burdine,* 450 U.S. at 253. Thus, to defeat a defendant's properly supported motion for summary judgment, the plaintiff must produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason for the discharge.  *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).

Defendant contends that plaintiff has failed to establish a *prima facie* case of employment discrimination.  Defendant concedes that plaintiff is a member of a protected class both as to her gender and age.  It argues, however, that as a Caucasian woman, plaintiff is not a member of a protected class for purposes of her race discrimination claim under Title VII, and thus the claim must be dismissed.  Additionally, defendant argues that plaintiff cannot show an adverse employment action.  When it was determined that plaintiff

was to be removed from the 5 p.m. newscast, she was offered a position as the anchor on the weekend newscast, along with her reporting duties, at the same salary. Plaintiff declined this offer, and continued as a reporter at the same rate of pay. Finally, defendant argues that plaintiff's reassignment does not give rise to an inference of discrimination. Alternatively, assuming that plaintiff has established a *prima facie* case, defendant argues that it has proffered legitimate, non-discriminatory reasons for her reassignment, and plaintiff has not shown that those reasons are a pretext for discrimination.

The court concludes that plaintiff's reassignment from the anchor position to a reporter constitutes an adverse employment action. The Second Circuit broadly defines what constitutes an adverse employment action, holding that it is a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation omitted). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)). Adverse employment actions typically include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir.1995) (citing *Rutan v. Republican Party*, 497 U.S. 62, 75 (1990)). While a plaintiff's subjective perception that a demotion has occurred is not enough, a transfer is also an adverse employment action if the reassignment is, in truth, a demotion. *See Bernheim v. Litt,* 79 F.3d 318, 325 (2d Cir. 1996); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996), *cert. denied*, 522 U.S. 816 (1997). The question is whether the transfer involves a

dramatic shift downward in skill level required to perform job responsibilities, considering also allegations of harm to plaintiff's reputation, opportunities for advancement, and earning potential. *Bernheim v. Litt*, 79 F.3d at 325; *Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir. 1995). Because the protections of Title VII, the ADEA, and the Human Rights Law are not limited to "instances of discrimination in pecuniary emoluments," *Rodriguez v. Bd. of Educ.*, 620 F.2d 362, 366 (2d Cir. 1980), the court finds that plaintiff's reassignment "arguably altered the terms and conditions of [her] employment in a negative way," which is sufficient to satisfy the *McDonnell Douglas prima facie* test. *de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 22 (2d Cir. 1996); *Rodriguez*, 620 F.2d at 365 (transfer constituted adverse employment action where plaintiff proffered evidence demonstrating that transfer was "in effect, a demotion that would constitute a serious professional setback and stigma to her career"); *see also Collins v. Illinois*, 830 F.2d 692, 702-04 (7th Cir. 1987) (lateral transfer involving same pay and benefits but change in responsibilities held to be an adverse employment action); *Zuffante v. Elderplan, Inc.,* 2004 WL 744858 (S.D.N.Y. March 31, 2004) (lateral transfer, involving no change in salary or benefits, was adverse employment action, where transfer resulted in decreased responsibilities). Even had plaintiff accepted the offer of the weekend anchor position, that too could be seen as a demotion. Weekend work is typically less desirable, and the weekend anchor position necessarily involves fewer on-air appearances.

## A. Age Discrimination

Assuming that plaintiff has presented a *prima facie* case of age discrimination, defendant has countered this showing with legitimate, non-discriminatory reasons for

plaintiff's reassignment.  Darryll Green testified that he decided to make a change at the 5 p.m. anchor position because it was the lowest ranked local newscast.  He did not feel that plaintiff was a strong anchor, and the market research confirmed his opinion. Additionally, Mr. Green testified regarding plaintiff's performance problems, specifically lateness and lack of preparation, that contributed to her poor on-air performance.

As defendant has proffered legitimate, non-discriminatory reasons for plaintiff's reassignment, plaintiff must now produce sufficient evidence to support a rational finding that the reasons proffered by the employer were false, and that more likely than not discrimination was the real reason for the discharge.  *Viola v. Philips Med. Sys. of N. Am.*, 42 F.2d at 716.  Plaintiff points to the following evidence in support of this claim:  the reassignment of Rich Kellman, Victoria Hong, and herself from anchor duties within a space of approximately three years, and the failure of Mr. Green to consider Ms. Hong as a replacement for Bazi Kanani when Ms. Kanani left WGRZ; remarks made by Bruce Corris, the acting news director; and "code" words used by Mr. Green in describing younger anchors.  Finally, plaintiff offers the affidavit of Michael J. Maciejewski, a former WGRZ-TV employee, in which he expressed his opinion "that race and perhaps age were motivating factors in the quick hiring and quick promoting of Ms. Kanani."  Item 54, ¶17.

None of these items of evidence is sufficient to show that the reassignment of plaintiff from the anchor desk to reporter was motivated by age discrimination.  Plaintiff points to four employment decisions (including her own reassignment) in the space of approximately four and one-half years as evidence of age discrimination at WGRZ. However, for statistical evidence to be probative, the sample must be large enough to permit an inference that plaintiff's status in a protected group was a determinative factor

in the employer's decision.  *Haskell v. Kaman Corp.,* 743 F.2d 113, 121 (2d Cir. 1984).

Here, the circumstances of Rich Kellman and Victoria Hong are statistically insignificant

to show a "pattern and practice" of discrimination at WGRZ.  *See Pollis v. New School for*

*Social Research,*132 F.3d 115, 121-22 (2d Cir. 1997) (statistical comparison to 8 co-

workers could not support inference of discrimination); *Alleyne v. Four Seasons Hotel,*

2001 WL 135770 (S.D.N.Y. February 15, 2001) (sample size of four is statistically

insignificant).   Additionally, while plaintiff concedes that Darryll Green was the sole

decision-maker with respect to herself and Ms. Hong, she attributes the decision by Mr.

Green's predecessor to terminate Rich Kellman's anchor duties to Mr. Green as well.  The

failure of Mr. Green to reverse a decision made by his predecessor is not evidence of

discrimination by Mr. Green.  *See Alleyne,* 2001 WL 135770 at *12 (court rejected

evidence of discrimination against other employees where different decision-makers

involved).  Additionally, in the case of Victoria Hong, she was 39 years old at the time of

her reassignment from anchor duties, and was replaced by Maryalice Demler, who is only

two years younger than Ms. Hong.   Under these circumstances, an inference of

discrimination cannot be drawn from the replacement of one worker with another who is

insignificantly younger.  *See Jensen v. Garlock, Inc.,* 4 F. Supp.2d 219, 223 (W.D.N.Y.

1998).

Plaintiff also cites to the various "code words" used by Mr. Green in his descriptions

of Bazi Kanani and Jodi Johnston, two younger news anchors, as indicative of pretext.

Stray remarks in the workplace, by themselves, without a demonstrated nexus to the

complained-of personnel action will not defeat an otherwise well-founded motion for

14

summary judgment.  *See Mars v. Service Now for Adult Persons,* 305 F. Supp.2d 207, 214 (E.D.N.Y. 2004).   Mr. Green's statements that the younger women were "growing" or "developing" were not made in the context of actual employment decisions, but were made at his deposition in response to questions by plaintiff's counsel.  "[I]solated and ambiguous statements . . . 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.'"  *Spence v. Maryland Cas. Co.,* 803 F. Supp. 649, 668 (W.D.N.Y. 1992), (quoting *Gagne v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989), *aff'd*, 995 F.2d 1147 (2d Cir. 1993)).  Similarly, a single stray remark that plaintiff could be replaced by someone "younger and prettier" attributed to Bruce Corris, the acting news director and non-decision-maker, unrelated to the employment decision, does not support an inference of discrimination by Darryll Green.  *See Jordan v. Olsted Corp.,* 111 F. Supp.2d 227, 235 (W.D.N.Y. 2000), *affd*, 25 Fed. Appx. 45 (2d Cir. 2001).  Additionally, the suggested title of "Senior Reporter" was rejected by plaintiff, and was not pursued by Mr. Green.   Finally, the Maciejewski affidavit does not support an inference of discrimination.  Mr. Maciejewski offers only his opinion, completely devoid of factual basis, that age may have been a factor in the decision to reassign plaintiff from the 5 p.m. news.  Conclusory allegations unsupported by any evidence are insufficient to defeat the defendant's motion for summary judgment.  *See Bickerstaff v. Vassar College,* 196 F.3d 435, 451-52 (2d Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000) (mere conclusory allegations of discrimination unsupported by any acts, statements, or admissions of decision-maker); *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997) (plaintiff must provide more than conclusory allegations of discrimination to defeat motion for

summary judgment); *Byars v. Jamestown Teachers Ass'n,* 195 F. Supp.2d 410, 414 (W.D.N.Y. 2002) (plaintiff's speculation regarding discrimination is insufficient to defeat summary judgment).  Plaintiff has presented no proof that she was removed from her position as the 5 p.m. anchor because of her age.  Accordingly,  plaintiff's age discrimination claims (Counts II and XIV) must be dismissed.

### B.  Gender Discrimination

Plaintiff argues that she was improperly removed from the anchor position based on her gender.  She contends that WGRZ-TV always paired male and female anchors, a practice she refers to as "gender slotting."  She also argues that the fact that Stacey Roeder, a female news director, was terminated because she was reportedly "too controlling" is further evidence of gender discrimination at WGRZ-TV.  Plaintiff has failed to sustain her burden with respect to her claim of gender discrimination.

Following plaintiff's reassignment, she was replaced by another woman, Bazi Kanani.  Clearly, if defendant was guilty of gender bias, it would not have replaced plaintiff with an anchor of the same gender.  Plaintiff's variation on this argument is that since the only available replacements were female anchors, she was targeted for reassignment instead of her co-anchor, Scott Levin, when it was decided to "make a change" in the 5 p.m. newscast.  Thus, plaintiff argues, gender was an impermissible determinative factor in her reassignment.

This argument is factually inaccurate and does not constitute proof of gender discrimination.  Mr. Green testified that following plaintiff's reassignment, WGRZ management considered several possible scenarios, including having Mr. Levin anchor the

5 p.m. newscast alone, without a partner, and would have considered a male anchor team if another male anchor had been available.  Item 31, Exh. E, p. 53.  Plaintiff asks us to imagine whether plaintiff "would have been pushed out of her anchor job in April, 2002, if the only available replacements had been male."  Item 37, p. 18.  The proof before the court indicates that plaintiff would have been reassigned regardless of the gender of the available replacements.

Plaintiff has failed to sustain her burden on the motion for summary judgment.  Even assuming that she has set forth a *prima facie* case of gender discrimination, defendant has set forth legitimate non-discriminatory reasons for her reassignment, and plaintiff has offered no proof to show that those reasons were a pretext for gender discrimination. Additionally, Ms. Roeder's termination is statistically insignificant to indicate gender bias on the part of Mr. Green.  *See Haskell v. Kaman Corp.,* 743 F.2d 113, 121(2d Cir. 1984). Moreover, other than plaintiff's conclusion that Ms. Roeder was terminated for discriminatory reasons, there is nothing in the record regarding the circumstances of Ms. Roeder's termination from which the court could infer discrimination.  Plaintiff also argues that the April 2002 focus group, in which the subjects were asked to evaluate only women anchors, is somehow indicative of gender discrimination.  Mr. Green testified that the focus group was scheduled after the decision was made to replace plaintiff with Ms. Kanani, and the purpose was generally to evaluate the news, not to make employment decisions. Item 31, Exh. E., p. 7.  The court finds that the circumstances and purpose of the focus group is irrelevant to show gender discrimination.  Plaintiff has failed to sustain her burden on the motion, and the gender discrimination claims (Counts IV, VIII and XII) must also be dismissed.

17

### C. Race Discrimination

Defendant argues that plaintiff cannot set forth a *prima facie* case of race discrimination because, as a Caucasian woman, she is not a member of a protected class. Alternatively, defendant argues that plaintiff must satisfy a heightened standard of proof to prove her claim of so-called "reverse discrimination."   Title VII prohibits racial discrimination against Whites on the same terms as discrimination against non-Whites. *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 279 (1976); *McGuinness v. Lincoln Hall,* 263 F.3d 49, 53 (2d Cir. 2001); *Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 273 F. Supp.2d 292, 301 n.7 (W.D.N.Y. 2003), *aff'd*, 106 Fed. Appx. 746 (2004). Moreover, the Second Circuit has not imposed the heightened standard of proof in the context of a reverse discrimination claim, nor has it been imposed in this district.  *See Allaire v. HSBC Bank USA,* 2003 WL 23350119 (W.D.N.Y. October 27, 2003). Accordingly, this court will analyze plaintiff's claims of race discrimination under the usual *McDonnell Douglas* standard.

Plaintiff has shown that she is a Caucasian woman who was removed from her anchor position and replaced by an African-American woman.  Assuming that plaintiff has presented a *prima facie* case of race discrimination, defendants have set forth legitimate non-discriminatory reasons for her reassignment.   Once again, plaintiff has offered evidence purporting to show that these reasons are pretextual.  Specifically, she contends that Darryll Green reportedly told Jodi Johnston that "it was a good thing to have a little color in the evening news."  She also contends that Darryll Green convened a focus group that was 80 percent African-American to judge her performance against that of Bazi

18

Kanani, and that the station benefitted from replacing her with an African-American anchor.

At the time of plaintiff's reassignment, Ms. Kanani was already employed as a weekend anchor.  Defendant states that her reassignment to plaintiff's position earned no more "points" for the station in Gannett's diversity program, and this contention has not been refuted by plaintiff.  Additionally, plaintiff argues that the focus group that was five-sixths African-American illustrates racial bias.  This argument is undercut, however, by plaintiff's further argument that two African-American members of the focus group preferred her to Ms. Kanani until Mr. Green "changed the voting rules."  Plaintiff contends that Mr. Green wanted a focus group that would favor Ms. Kanani and thus buttress his decision to replace plaintiff.  This argument is speculation and conjecture, and is not proof that Mr. Green's decision to replace her at the anchor desk was motivated by reverse racial bias.  Additionally, Mr. Green testified that he convened the focus group after he had made the decision to remove plaintiff from the anchor duties and replace her with Ms. Kanani. Item 31, Exh. E, p. 9.  This testimony has not been controverted by the plaintiff.

Finally, both Darryll Green and Jodi Johnston have denied that Mr. Green made the statement regarding the benefit of "color in the evening news."  Defendant argues that the alleged statement is inadmissible hearsay, while plaintiff argues that it is admissible as it is not offered for the truth of the matter asserted and is evidence of Mr. Green's state of mind, or is admissible as a statement made in the course of Ms. Johnston's employment. *See* Fed. R. Evid. 801(d)(2)(D).

The alleged statement by Darryll Green is inadmissible hearsay and cannot be relied upon to defeat the motion for summary judgment.  Plaintiff seeks to offer the statement through her own testimony by recounting a statement allegedly made by Ms.

19

Johnston, which Ms. Johnston has denied making.  Thus, there are two alleged out-of-court statements at issue, Ms. Johnston's and Mr. Green's.  These facts are analogous to those in *Schoenfeld v. Worldwide Dreams LLC,* 2000 WL 28159 (S.D.N.Y. January 13, 2000), in which the court found inadmissible plaintiff's statement that a co-worker reported hearing the company president make a statement indicative of age discrimination.  The co-worker then denied having made the statement to the plaintiff or hearing the president make any statement indicative of age discrimination.   Here, Ms. Johnston's alleged statement, as reported by plaintiff, is hearsay as it is an out-of-court statement offered for the truth of the matter asserted, that Mr. Green made a statement indicative of racial animus.  *See* Fed. R. Evid. 801.   While plaintiff does not offer Mr. Green's alleged statement for its truth and it may be indicative of his state of mind, plaintiff has no personal knowledge of it and cannot testify as to what Mr. Green may have said.  *See Schoenfeld,* 2000 WL 28159, *6.  Additionally, Ms. Johnston's purported statement is not admissible as a statement concerning a matter within the scope of her employment.  Pursuant to Fed. R. Evid. 801(d)(2)(D), a statement is not hearsay if it is offered against a party and is made by the party's "agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ."  While the Second Circuit has not specifically addressed the question whether a statement by a co-worker relating the alleged statement of a supervisor with decision-making authority concerns a matter within the scope of the co-worker's employment, other circuits to have reached the issue have held that such statements are not within the scope of employment when the declarant is neither the plaintiff's supervisor nor has a significant role in the employment decision at issue.  *See Taylor v. Potter,* 2004 WL 1811423, *17 (S.D.N.Y. August 16, 2004), *aff'd,*

2005 WL 2136962 (2d Cir. September 6, 2005); *accord Howley v. Town of Stratford,* 217 F.3d 141, 155 (2d Cir. 2000).  Ms. Johnston is neither plaintiff's supervisor, nor did she play a role in the decision to reassign plaintiff from her anchor position.  The alleged statement that Darryll Green made a comment indicative of racial animus does not fall within the scope of Ms. Johnston's employment, and the statement is inadmissible hearsay.

Finally, plaintiff offers the affidavit of Michael Maciejewski to show that the decision to reassign plaintiff was pretextual.  Mr. Maciejewski, who was a weekend producer at WGRZ-TV in the fall of 2001, stated "it was clear" that the station wanted to hire an African-American for an on-air position.  Item 54, ¶ 5.  Mr. Maciejewski viewed videotapes of candidates for the position of weekend anchor, and all the tapes were of minority candidates.  *Id.,* ¶ 6.  Bruce Corris, acting Executive Producer, reportedly told Mr. Maciejewski that the station wanted to fill the position with a minority candidate.  *Id.,* ¶ 8.  Bazi Kanani was hired in January 2002 as the weekend anchor.  Mr. Maciejewski stated that Ms. Kanani's "inexperience was a detriment to her as a reporter" and as a news reader "she did not do particularly well . . . ."  *Id.,* ¶12.  To his "shock," Ms. Kanani was promoted to the weekday anchor position in April 2002, a position for which Mr. Maciejewski believed Ms. Kanani was "not ready."  *Id.,* ¶¶ 10, 11.  It is Mr. Maciejewski's opinion that plaintiff "was a victim to (sic) Mr. Green's determination to keep Ms. Kanani on a fast track in the company."  *Id.,* ¶ 17.

The Maciejewski affidavit is a conglomeration of hearsay and opinion unsupported by any factual allegations.  It is apparent that Mr. Maciejewski was not a part of the decision-making team at WGRZ-TV and has no direct knowledge of the factors behind the

decision to terminate plaintiff's anchor duties.  Mr. Maciejewski's opinion as to the relevant strengths of plaintiff and Ms. Kanani as reporters and anchors is irrelevant to this court's determination of pretext.

Plaintiff has failed to offer admissible evidence to show that defendant's reasons for removing her from the anchor position were pretextual.   Accordingly, the race discrimination claims (Counts V, IX, XI and XIII) must be dismissed.

### 3.  Equal Pay Act Claim

In order to make out a *prima facie* case under the Equal Pay Act, plaintiff must show that she was paid different wages than those of male co-workers "for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions."  *Martinez v. Niagara Frontier Transp. Auth.,* 2001 WL 1823602, *3 (W.D.N.Y. December 14, 2001) (quoting *Corning Glass Works v. Brennan,* 417 U.S. 188, 195 (1974)).  If plaintiff establishes the pay differential, the burden shifts to the employer to justify the difference by showing that the disparity results from seniority, merit, or other factors not related to gender.  *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 524 (2d Cir. 1992).  Plaintiff argues that her salary should be compared to that of Rich Kellman, who was employed by WGRZ in 1974.  Mr. Kellman has been a reporter and anchor, has had experience in other markets prior to his employment at WGRZ-TV, and has won numerous awards for his work.  At the time of this action, Mr. Kellman was earning approximately $18,000 more than plaintiff.

Defendants have shown that the disparity in pay between plaintiff and Mr. Kellman is justified by Mr. Kellman's additional 16 years of service at WGRZ-TV.   Seniority,

experience, and longevity of service are gender-neutral, non-discriminatory factors that justify higher compensation. *See Howard v. Community Action Org. of Erie County, Inc.,* 2003 WL 21383271, *3 (W.D.N.Y. May 30, 2003). Accordingly, plaintiff has not shown a violation of the Equal Pay Act, and the claim (Count I) is dismissed.

## 4.  State Law Claims

Defendant argues that plaintiff's state law claims for infliction of emotional distress (Count VI) and breach of contract (Count X) should be dismissed. Plaintiff does not oppose the defendant's motion to dismiss the emotional distress claim, but asks that it be without prejudice. Item 37, p. 44-46.

The emotional distress claim is dismissed with prejudice. Liability for the intentional infliction of emotional distress is only imposed where the conduct in question "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized society." *Murphy v. American Home Prods. Corp.,* 448 NE2d 86, 90 (N.Y. 1983). Plaintiff has not satisfied this rigorous standard despite lengthy discovery.

Additionally, defendant argues that if the discrimination claims are dismissed, there is no merit to plaintiff's breach of contract claim. Plaintiff concedes that the contract claim is based on the underlying claims of discrimination. As the court has dismissed the discrimination claims, the contract claim also fails and is dismissed.

Finally, plaintiff's state law claims of discrimination (Counts II, III, IV, V, VII, VIII, and IX) are preempted by her federal claims and are also dismissed.

## CONCLUSION

Accordingly, defendant's motion for summary judgment is granted, and the complaint is dismissed.  The Clerk shall enter judgment in favor of defendant.

So ordered.

_\s\ John T. Curtin_
JOHN T. CURTIN
United States District Judge

Dated: October 27, 2005
p:\opinions\02-447.aug2205